Nicholson, C. J.,
delivered tbe opinion of the court:
Lewis Jefferson was tried in the criminal court, at Memphis, for housebreaking and larceny, and was convicted of housebreaking, and was sentenced to ten years in the penitentiary.
Several grounds are relied on for a reversal of the judgment :
1. That the proof of the identity of the defendant as the person who.assaulted the wife of the prosecutor immediately after the house was entered. He is identified bi/ but one witness, the wife of the prosecutor. It was about *331 two o’clock at night, and it was a starlight night. She says that when she went out into the alley, and hallooed “Murder and robbers,” “she saw two men, the defendant and another black heavy man” on the end of the bridge next to the city, about forty feet from where she came out into the alley. She went down to the end of the bridge, and asked them if they were friends or -enemies. They said friends, and came across the bridge to- her, and she told them to go into the house and help her husband, who was being robbed and murdered; that she went bacK to the side gate to open it for them, but that they did not go in, but took hold of her, and choked her, and kicked her, and threw her down. She saw them by the light o-f a lamp that was sitting in a 'window in the house, about ten feet from the gate- — she was pretty sure the defendant was one of them — the defendant was the one that caught her by the neck and threw her down. She knew the defendant was the man that took hold of her neck and shoulders, and threw’’ her dowm; she saw him by the light of the lamp when they assaulted her. She was certain that she had seen the. defendant at their store before the robbery, but did not know his name.
It is argued here that under the circumstances which surrounded the witness, the jury ought not to have regarded her testimony as sufficient to establish the identity of the defendant. She was necessarily under great excitement, but we cannot say that on that account the features of her assailant would malee a less impression on her than if she had been free from excitement. Nor can we say that by the light falling upon her assailant from a lamp ten feet" distant she could not distinctly recognize his features so as to recollect them. Taking her whole testimony together, we think she was fully convinced of the identity of the defendant. And if the jury saw nothing in the case to discredit her, w-e cannot undertake to say that they ought not to have given hex credit.
*332 2. But it is next argued that if it be true that defendant Avas one of the persons Avho. assaulted the wife of the prosecutor, it does not follow that he Avas one of the robbers. This Avas a question for the jury to determine. The house had just been entered and robbed by a number of men— several pistol shots had taken place in the house; the wife of the prosecutor had run out and cried “Murder and robbers.” At this time the defendant and his companions Avere seen standing about forty feet distant. They necessarily heard the noise. They are asked by her if they are friends or enemies. They answer friends, and immediately afterwards assault her in a way to prevent her from giving any further alarm. The jury have inferred that the defendant AAas either' one of the robbers who had been in rhe house, or one of those standing as pickets, to- protect the inside robbers fro-m outside interruption. We cannot say that the facts did not Avarrant their conclusion.
3. It is said that there is no sufficient evidence of the housebreaking, because, it is further said that the only evidence is that of the. prosecutor, who only states that his house was broken into by robbers. We need not decide whether this of itself Avould be sufficient evidence, as Ave find other testimony in the record with which this is to be considered. The Avitness, Louisa Fair, proves that she Avas at a Avindow on the opposite side of the alley, distant fifteen or twenty feet, and saAv several men at the window of prosecutor’s store, one of whom aauis working with a pick, or something of the kind, and the others looking on. She stood and AAatched them. She says she. remained there until the robbers broke into Mr. Durant’s store. Upon this evidence there can be no objection to the verdict for insufficiency of proof on the question of breaking into the- house.
4. Tt is said that it Avas error in the court to state to the jury that it Avas conceded that the building broken into Avas a dwelling-house. This, of course, meant that it had been conceded in the argument of the counsel for the prisoner, *333 and not that any such concession was contained in the bill of exceptions. It does appear from the -bill of exceptions that the proof was distinctly made that it was a dwelling-house as well as a store, and we may well presume that it was because of this proof the concession was made to which the judge alluded.
5. It is insisted that the proof of ownership of the property does not correspond with the averment of ownership in the indictment. In the indictment it is averred that Eobert It. Durant is the owner; in the proof E. E. Durant is named as the owner. As the ownership of the property was averred in the indictment to be in Eobert E. Durant, it was necessary to support a conviction to prove the ownership as averred. E. E. Durant was examined as a witness and proved that he was the owner of the property. The judge charged the jury that the 'ownership must be proved as averred. They found the defendant guilty, and hence necessarily found that Eobert E. Durant and E. E. Durant were one and the same man.
6. It is argued that the criminal judge erred in his charge on the defense of alibi in this, that in charging the jury to scrutinize the alibi testimony closely, be deprived the alibi defense of its true force. It is not denied that the charge on the defense of alibi is in strict conformity with the law, as it has been recognized and administered in the circuit and criminal courts ever since the case of Thompson v. The State, 5 Hum., 138. If it he true, as laid down in that case, and as it has ever since been held, that this defense is so liable to abuse from the ease with which it is concocted that it requires great strictness and attention on the part of the court and jury to avoid being frequently misled by it, then it is certaintly eminently proper that juries should be put on their guard, and instructed to scrutinize the evidence to make out such defense with close attention. Of course this caution should be accompanied, as it was in tbis case, witb the qualification *334 that when such defense is clearly and fully made out, it is very conclusive.
1. The last- error assigned is that the criminal judge refused a new trial for the newly 'discovered testimony of the witness James Gilliam. It is stated in the bill of exceptions that this witness was heard the same as though affidavits were filed, showing that the testimony was in all things newly discovered, without the fault or negligence of defendant, affidavits to predicate the newly discovered evidence [upon] being waived by the attorney-general.
We understand this to mean that the attorney-general waived the usual affidavit of the defendant, stating the discovery of newly discovered evidence, and its character, as well as the reasons why the defendant had been guilty of no fault or negligence in not having produced it on the trial.
But we do not understand that it was intended by the attorney-general to admit, not only that the evidence was newly discovered, but that there had been no fault or negligence in not producing it on the trial. These matters, as in cases where the affidavit of the defendant is filed, were to be determined by the court when the newly discovered witness was examined by the judge.
Tho newly discovered witness, Gilliam, was examined in court, and stated that soon after the robbery the prosecutor had said to him that he could make $500 by swearing to the identity of the defendant and another party named, which he refused to do; that lie was examined as a witness on the first trial, and attended as a witness on the second, but was not; that he had never told their offer to bribe him, to defendant or his counsel, but that he told it to one Neilas the same day the offer was made, and before the last trial he told it to the. defendant’s mother, who was present at the last trial.
N eilas was examined, and corroborated Gilliam, as to his having told him of the offer*. He- gave Gilliam a good *335 character, and said be was not on speaking terms with the prosecutor.
The prosecutor was examined, and denied entirely that he had ever had conversation with Gilliam, or any one else at any time.
Upon this examination of the question, the judge refused the new trial, but whether because of fault or negligence on the part of defendant in not sooner producing the testimony, or because he did not give credit to the new witness, or because he did not regard the new evidence as material, does not appear.
After the judge has taken the special pains to investigate, and decided the matters involved in this inquiry, as shown by the record, we should be slow to hold that .he had abused his discretion in refusing a new trial.
With the witnesses before him his opportunities for forming a correct judgment was so much better than ours can be, we feel bound by his actions, especially as we are not prepared to say, that even as the case is presented before us on the record, his action was erroneous. It would seem that if the prosecutor was capable of bribing a witness at the expense of 35500, he would not hesitate to make the evidence himself, in his own testimony as a witness, but this he did not do.
Upon the whole casa we think there is no error, and that the judgment must be affirmed.